We'll hear counsel in United States v. Smathers. Good morning, Your Honors. The issues on this appeal are layered, and there are four of them, and numbers 2, 3, and 4 flow from the first, which is the District Court's erroneous ruling denying Mr. Smathers credit or a reduction of his restitution obligations and finding that there was no suggestion of a connection between a complaint by AOL against co-conspirators and Mr. Smathers. The three other issues, the burden of proof, the fact that there was no hearing and no appointment of counsel, flow from that erroneous ruling. And the government agrees that that ruling was, in fact, erroneous. I can refer the Court to page 106 of the appendix, and that's the government's opposition to Mr. Smathers' motion, and they say that there is a connection, a clear connection between Mr. Bourneville, who's one of the defendants in the civil suit, and Mr. Smathers. Judge Hellerstein also said, just before he said there was no connection, that the loss was not necessarily the same between the civil suit and the criminal case against Mr. Smathers. But the issue isn't whether loss is necessarily the same. That's sort of a double jeopardy standard. It's whether they were the same, and that had to be resolved in a hearing. Government argues that in an attempt to show that they were different, the losses between the two were different, they point to a particular paragraph in AOL's complaint about emails being auto-configured and spam sent to them. Our response to that is there's no way that AOL could prove that. These emails came from, I forget the term for it, like a technology term for it, but they came from different computers that all concealed where the spam was generated from. The damages that they could show were from the list of email customers that Mr. Smathers sold and that the co-conspirators used. There's also the difference between the restitution the court imposed, which was $84,000, and a default judgment against one of the defendants in an AOL civil suit, which was a whopping $12.8 million. I've never been able to figure out how that was calculated. Was it collected? Not that we know of. Part of the problem here— We don't know whether any part of it was collected. There was about $95,000 in fully loaded Hummer collected from Bourneville. That was back in 2005. The judgment says that the total loss was $300,000. That, I believe, when I analyze it, my deduction is that that was the loss for purposes of the guidelines. But when you look at the sentencing minutes and you look under the column restitution, the restitution ordered was $84,000. That's clear. And to the extent that there's any discrepancy between the sentencing minutes and the judgment, the sentencing minutes would control. Was the court required to assess the entire amount of loss against each of the defendants? No. I think there's a provision of the statute that allows the court— that the loss was $300,000 and that this defendant was required to make restitution of $84,000 of that. I don't know other than the fact that the government's contention was it was a loss under the guidelines, also a loss for restitution purposes. So that number made its way into the judgment. But Judge Hellerstein was very clear that $300,000 was not a proper figure for restitution in the sentencing minutes. For this defendant. He didn't clarify. He was dealing with this defendant. Correct. But he was dealing with the loss from the sale of the e-mail addresses. And he didn't make any distinction between aspects of the loss. The one point that I didn't make in the brief that I wanted to make here is that we don't know if any money was collected on the judgment against Hawk because that proceeding is sealed. And one of the things we sought to accomplish in the case was to unseal that proceeding. One of the things Mr. Smathers sought to accomplish, per se, was to unseal that proceeding. Obviously, his restitution payments would only be applied to a compensatory aspect of the civil judgment. And I researched, well, how do you know in a judgment what's compensatory and what's statutory? And the only thing I could come up with was some IRS rulings. Because it comes up for the IRS whether when a taxpayer pays on a judgment, compensatory one or the other is not taxable or tax deductible. So it's a factual inquiry. And it would have to occur here before a decision could be made. On the burden of proof, it's clear that Judge Hellerstein imposed the full burden of proof on Mr. Smathers. And there's a section of the 366-4 which says for other issues, and this is another issue, it wasn't specified in that particular paragraph. The burden of proof should be allocated as justice requires. Mr. Smathers came forward with evidence to the extent that it wouldn't be admissible evidence. He was able to identify where it could be found. The court first ordered the government to seek unsealing and get that information. Abandoned that ruling, apparently, and- Did the government ever explain to the court, did the government ever respond to the court's directive that it unsealed, get the records unsealed? I didn't see in the responding letter, which was late, pursuant to the judge's instructions, the government didn't say a word about any attempt it made to honor the court's instruction to unseal the record, did it? It didn't. Letters devoid of any reference to that court's direction. I wonder why. I'm anxious to find out. I'll defer to my colleague on that. The court effectively allocated the full burden to Mr. Smathers, which was not in the interest of justice. He was uncounseled. It was a sealed lawsuit. It was an abuse of discretion. A hearing- Did the court explain why it had absolved the government of its obligation to get the records unsealed? No, there was nothing in his ruling that did that. There was one person in the proceeding against Mr. Smathers that was speaking to AOL. It wasn't Mr. Smathers, was it? No, it was the government. At the time that the restitution order was entertained, did not the government ask for additional time to allow AOL to contact the court with regard to what its injuries were? Indeed, it did. It seems to me that AOL and the government were talking to each other, and for some reason the court, recognizing that, instructed the government to contact AOL in order to get the records unsealed. But the government never explains why that didn't happen, does it? It doesn't. And the court doesn't seem to say anything. So we have no way of knowing from the court's own decision what the basis for the court's decision to then place the burden on Mr. Smathers was, as opposed to the government, who had a relationship with AOL and, in fact, was perhaps the one party that might be able to get AOL to unseal its records or at least disclose some of the information that was necessary. That's right. And they also had a personal, in the sense that Borneville was a person and not a technology giant. They make reference in their own brief that Borneville was part of the conspiracy or part of the chain of the injury that Smathers started in play, because Borneville was the one who used the e-mail addresses to then create the 3 to 7 billion SPAMs that were occurred, and the SPAMs were the measure of the restitution that the government sought from Mr. Smathers, was it not? Yes. It was Borneville who did it. It was Borneville's activity that generated AOL's loss, which then Smathers was directed to recompense for restitution. But the government tells us it's not the same. Right. And relies on the general proposition that Smathers didn't satisfy his burden of proof, and I've explained why that was not fair. Ms. Wolf, you've retained some time. If you want to take it now, you've effectively taken it already, but do you want to reserve some time? Well, I'd like to reserve, and if nothing else, when I stand up again, I want to talk about the word later. Don't tell us what you're going to tell us eventually. I'll reserve. Thank you. Thank you. Mr. Thomas. Good morning, and may it please the Court. My name is Andrew Thomas, and I represent the United States on this appeal. But you did – Mr. Ferreira was the lawyer in front of the government – for the government at the time, wasn't he? I was the lawyer for the government at the time of the response to Judge Hellerstein in 2016. No lawyer for the government is still with the office who – Why did your letter in 2016 not respond to Judge Hellerstein's direction that you get the records unsealed? Two reasons, primarily, Your Honor. The first reason is that upon reviewing Mr. Smather's request, it seemed facially invalid. The second reason is that – But you didn't tell – did you tell Judge Hellerstein that you should be absolved from it because it was facially invalid? No, Your Honor. We directed it – You never said a word to Judge Hellerstein about why you didn't attempt to unseal the records, did you? Did not, Your Honor, no. Right. So how is it that Hellerstein had any reason to believe that you'd made any attempt to adhere to his order? And yet he suddenly switches the burden of proof to Mr. Smather's when he recognizes that you're the people who talked to AOL, not him. Your Honor, I respectfully disagree with that characterization. In 2007 – Wait a second. At the time that Smather's was found guilty, did your – was it you that asked for the additional time for AOL to have input with regard to Smather's restitution amount? The United States did, Your Honor, yes. Not you? I did not have the pleasure of – So someone in your office somehow knew that AOL might have something to say? That's right, Your Honor. You talk to victims, don't you? We do on occasion. In fact, I would think you would want to. I think the U.S. Attorney would want you to talk to victims, to represent victims. But so you – your office felt compelled, and I understand why. It makes perfect sense to me, to ask for time for AOL to weigh in on what Smather's would owe. And how did you calculate AOL's injury? How did you calculate it? You based it on the emails, the spam emails that Barnaval sent out, three to seven billion. Did you not? That's correct, Your Honor. Because AOL told you it was 10 cents a thousand. That's right. Right? So AOL told you that. Okay. Someone from AOL spoke to you. Okay. Didn't speak to Smather's, did they? Your Honor, actually, the information provided by AOL was, as the record reflects, discussed with Ms. Wolfe. Discussed with, but was it provided direct – I mean, did AOL call Smather's lawyer up and tell him what they were going to say? I doubt it. I doubt it. I doubt it very much. And so then the amount of restitution is calculated on how much Barnaval's emails, the minimal amount, they picked three billion, damaged AOL. Right? That is how the mathematical – because he got a hold of 93 million email users that Smather's sold to an intermediary and then got sold to Barnaval. It's not the same injury? No, Your Honor, that's not – Even though you did the calculation using Barnaval's emails to find out how much Smather's owed. Your Honor – It doesn't sound right to me. Well, Your Honor, if I may explain. Sure. So the government's view first in light of the specific claim here under 3664J2 is that there be later recovery of compensatory damages for the same injury. So the court is focusing on the third prong. And certainly there is factual overlap. There's no dispute on the government side. There's factual overlap between the allegations in the civil case and the conduct that Mr. Smather's was held accountable for. But what's absolutely missing is that whatever was recovered, if anything, from Mr. Barnaval was for the same injury specifically, especially in light of the allegations in the civil complaint that Smather's was not the only source of spam and that Mr. Barnaval injured AOL above and beyond merely the sending of emails. Well, okay. So there could have been other people who provided email addresses for which Barnaval then invoked his spamming activities on AOL. That's right, Your Honor. But there's no way to know because the records are sealed, right? Well, Your Honor, I would say . . . You didn't tell Judge . . . you never told Judge Hellerstein that you couldn't get them unsealed when he asked you to do so. I find that I just . . . knowing Judge Hellerstein as I do, being the fellow at times who gets upset when his orders aren't followed, I can't understand how he absolved you of this. Well, Your Honor, I think . . . He doesn't say a word. Does he say a word about it, how he changed his mind? How are we to know his reasoning? Well, Your Honor, I'm aware of no specific writing or commentary by Mr. . . . or excuse me, Judge Hellerstein on that issue. But I would respectfully, again, disagree with the Court's characterization that Judge Hellerstein switched his assignment of the burden. In fact, in 2007, Ms. Wolfe raised to the Court the idea that Mr. Smathers would claim credit for this settlement, which predated his guilty plea, as it happens. And Judge Hellerstein, at that time in 2007, told Mr. Smathers through counsel, come forward with evidence and I will entertain the claim. It wasn't for eight years or so before Mr. Smathers came forward again to seriously press the issue. And so at that point, it's not a matter of the government . . . Smathers is pro se. He is . . . He's not counseled. And so he's . . . frankly, he's turned his life around to some degree, and that's great. That's not a reason to reduce his restitution work. What I don't understand is that when the Court says for you to go and get them unsealed, I would agree that that's not placing the burden of proof on you. But it's recognizing that unsealing the records becomes vitally important in understanding whether this is a recovery for the same injury or for a different injury, which you point out. And then the Court turns around and, without ever saying anything about deciding not to require the records to be unsealed, says Smathers doesn't meet his burden because he can't tell us that the injuries are the same. And I find it curious because, obviously, Judge Hellerstein understood that the one party that probably could find that out was you. Your Honor, at the point at which Judge Hellerstein is making that decision, Smathers and the government have an equal relationship to the case in Virginia, notwithstanding the resources difference, which I'm sensitive to. But neither Smathers nor the government or parties . . . You see the scales of justice with you on one side, the United States government, and Mr. Smathers pro se is balanced equally. Your Honor, I don't claim and I'm certainly not suggesting that Mr. Smathers has the resources, but the statute 3664E says interests of justice generally . . . And Judge Hellerstein told you to get the records unsealed. He did, Your Honor. You don't say a word to him. You don't say a single word to him. Are you telling me that you had no communication with the court as to any efforts you made with regard to getting these records unsealed? Your Honor, our complete communication to the court is that . . . As an officer of court, did you make any effort today, in front of me now, in federal court, did you make any effort to unseal those records? I did not, Your Honor, no. You did not. So, you disobeyed Judge Hellerstein's order or did you just ignore it? Your Honor, we believe that the response, the response noting the legal deficiencies of Mr. Smathers' application, undermined the sort of the framework that the judge had brought to the issue. You don't think that Judge Hellerstein asked you, told you to go and make an attempt to unseal those records? Here's page A-102. He absolutely . . . On February 29th, 2016, that he did not direct you to attempt to unseal those records? He absolutely did make that request. He did, and you're telling me now you made no effort? I made no effort, Your Honor. That's what I wanted to know. Can you address, continue to address this question? Is Judge Hellerstein an aggrieved party in some sense? Is Judge Hellerstein an aggrieved party? No, he is not, Your Honor. Do we know anything about his view of the matter that you've just had an extended colloquy about? We know what he put into his final decision on this matter, the decision that was appealed. And what did he put there? And what he put there, I think, recognizing the context that the government's response had brought, was that this wasn't a new issue. It was not, as might be misperceived from Mr. Smathers' 2016 request, something that had come out of the blue based on new records. It was, in fact, a claim that Smathers could have raised at his sentencing when he didn't. It was about a disputed amount of loss and his responsibility for it that, in fact, he had stipulated in a guideline sense was higher than the amounts we're dealing with here. It also related to a claim he had raised in this precise form in 2007, but had then abandoned for a period of eight years. He didn't explain his exercise of discretion. He didn't give us reasons why Smathers was more likely the person to bear the burden than you. To understand whether he's abused his discretion, we have to know what his thinking was. He doesn't tell us that he previously had ordered you to get those records unsealed, and then he absolved you from that, notwithstanding the fact that you never said a word to him about the fact that you hadn't obeyed his order. We have no way of knowing how he exercised his discretion, do we? Other than the fact that he said that Smathers came up short? Your Honor, I think that the record does evince— Does his opinion say, does his order at 150, does it say anything about his previously ordering you to unseal the records and then for some reason he's changed his mind that you didn't have to do that? It does not, Your Honor. Okay, thank you. Let me ask a couple of questions, if I may. Do we have jurisdiction here? Jurisdiction, Your Honor, the— Is this order, whatever this order is before us, is it interlocutory or final? It is a final order. The court in Yalenkac addressed a similar type of order. If the district court conclusively determines a claim to a credit, then that order, notwithstanding the ability of the parties later to litigate issues regarding restitution, is final enough to appeal. And that case governs the issue here? Governs the appealability, Your Honor, yes. All right, thank you. Thank you, Your Honor. Thank you, Your Honors. The government has raised in its papers and in argument a number of times that Smathers could have raised this argument at sentencing. They didn't raise that argument below so that it was waived, and it was no part of the judge's decision in this case. I also, there is a provision in 366-4, it's F1A, which says that the restitution order has to be rendered without consideration of any compensation from other sources. So an order of restitution was entered at the time of sentencing. And then this, Mr. Smathers' motion— I'm going to say it later. The statute does say later. Yes. A couple of the circuits look otherwise, but it's true that when you order restitution, you can't consider any other compensation that's been paid up to the time of the order, right? Right, you cannot. Right, because it's literally joint and several liabilities. Right. All right? But the statute clearly says later. Yes. So Congress could, I suppose, decide to give you a break on stuff that's recovered later but not stuff that's recovered previously. Right. The statutory scheme doesn't make sense if you only get credit for post-restitution order payments but not pre-restitution order. And the animating principle of the statute and the law is the common law, which is that there should be no over-recovery and no under-recovery. And the courts, a number of the courts, have talked about a two-step process. So the court renders the restitution order, and then the second step would be to determine credits. And that would include both pre- and post-restitution order. And I would submit that later means after the crime and not after the restitution order. Thank you very much. Thank you. We reserve decision.